UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

NATASHA MARIE LOGAN[1] and                          Case No. DG 09-08516
KENNETH LEE LOGAN, SR.,                              Hon. Scott W. Dales
                                                     Chapter 7

            Debtors.

_____/

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge


I. INTRODUCTION

This matter is before the court on the Chapter 7 Trustee's motion to compel Kenneth and Natasha Logan to turn over their prorated 2009 state and federal income tax refunds in the amount of $4,985.45.[2] In addition and closely related to the Motion, the Trustee objected to the Debtors' amended Schedule C, which they filed in response to the Motion.

The court set the controversy for an evidentiary hearing, which took place in Grand Rapids, Michigan, on July 28, 2011. The Trustee appeared and represented himself; the Debtors did not attend the hearing but appeared through their counsel, Jeffrey L. Hampel, Esq.

For reasons that follow, the court will overrule the Trustee's objection to the Debtors' amended exemptions, and deny his Motion.

_____

[1] Alias for Natasha Marie Logan: aka Natash M. Simon.
[2] As used in this Opinion, the court will refer to Kenneth and Natasha Logan as the "Debtors," and to Chapter 7 Trustee Jeff A. Moyer as the "Trustee." In addition, the court will refer to the prorated non-exempt portion of the 2009 state and federal tax refunds as the "Refunds," and to the Trustee's motion to compel (DN 26) as the "Motion."

## II. JURISDICTION

The court has jurisdiction over the Debtors' bankruptcy case pursuant to 28 U.S.C. § 1334(a), and these contested matters are "core" proceedings under 28 U.S.C. § 157(b)(2)(B) & (E).  These contested matters do not implicate the Supreme Court's recent holding in *Stern v. Marshall*, 131 S. Ct. 2594, 2601 (2011), and therefore the court may enter a final order resolving the dispute, subject to appellate review under 28 U.S.C. § 158.

## III. ANALYSIS

The parties evidently agree on most of the historical facts relevant to this dispute. Some of the Trustee's case depends upon the Debtors' deemed admissions under Fed. R. Civ. P. 36, some of his case depends upon judicial notice of pleadings in the court's file, and some of his case depends upon documentary evidence admitted at trial, mostly without objection. From this evidence, the court makes the following factual findings, pursuant to Fed. R. Civ. P. 52, made applicable here by Fed. R. Bankr. P. 9014 and 7052.

On July 17, 2009, the Debtors filed a joint, voluntary petition for relief under Chapter 7. When they filed their bankruptcy petition they also filed Schedule B, listing (among other property) a prorated right to receive 2009 income tax refunds in an "unknown" amount. On Schedule C the Debtors claimed the Refunds as exempt pursuant to 11 U.S.C. § 522(d)(5) in the amount of "$0.00." This exemption claim is curious and irregular because it suggests an intent to claim an exemption, but an exemption worth nothing.  Had the Debtors intended to claim no exemption, they could have accomplished this result by not including any reference to the Refunds on Schedule C.

The Debtors attended the creditors' meeting on August 21, 2009 and completed the Trustee's standard questionnaire, which the court admitted at the evidentiary hearing as Exhibit

4. In the questionnaire and contrary to their Schedules B and C, the Debtors reported that they did not expect to receive 2009 income tax refunds. Then, shortly after the creditors' meeting, the Debtors filed an amended Schedule C to add a coin collection discussed at the meeting, and they continued to claim the Refunds as exempt in the amount of "$0.00." Given the Debtors' financial condition at the time of the filing, the Trustee concedes they had ample exemption value available under 11 U.S.C. § 522(d)(5) to claim the Refunds as exempt. The Debtors received a discharge on November 17, 2009 and, according to their counsel, regarded their bankruptcy as concluded.

On January 20, 2010, the Trustee filed Form 1 reciting that the Debtors had identified a prorated 2009 tax refund in an unspecified amount and also noting there was other, unspecified property the Trustee might be able to administer. At the hearing, the Trustee explained that Form 1 is a document he reluctantly prepares purely for the statistical and administrative purposes of the United States Trustee. He explained that his reluctance stems from the fact that Form 1 is generally misunderstood, generates more questions than answers, and does not represent the Trustee's analysis of a debtor's assets, property values, or any proposed abandonments. The language of Form 1, however, is not so limited.

In early 2010, after receiving their discharge, the Debtors received and spent the Refunds. Although too late to do much good, sometime between May and September 2010 the Trustee sent three letters to the Debtors advising them to retain any non-exempt tax refunds because he regarded them as property of the estate. In response to the Trustee's letters and this Motion, and after the Debtors had filed their 2009 tax returns, the Debtors amended their Schedule C to claim the Refunds as exempt.

Prior to recent case law developments in our district, Debtors' counsel says he believed that claiming the Refunds in the amount of "$0.00" in Schedule C and an unknown value in Schedule B, provided sufficient notice that the Debtors planned to claim the Refunds as exempt in an amount to be determined after filing tax returns. Debtors' counsel, however, was mistaken in claiming the Refunds in that manner [3] because Schedule B requires the Debtors to estimate unliquidated refunds. *In re Thomasma*, 399 B.R. 20, 24 (Bankr. W.D. Mich. 2008) (line 21 of Schedule B "requires only an estimate"). *Thomasma* predated the Debtors' bankruptcy case.

Regardless, other than sending three letters and filing the instant objection and Motion, the Trustee offered no evidence that he suffered any prejudice by the manner in which the Debtors identified the Refunds on Schedule B and claimed them as exempt on Schedule C. The Trustee concedes that the Debtors disclosed the existence of the Refunds; they simply did not estimate them as they were required to do. Significantly, there is no evidence that the Debtors acted in bad faith. The record merely discloses an erroneous and ill-conceived method of claiming an exemption for an asset that had an unknown value at the time of filing.

In support of the Trustee's objection to exemptions and the corresponding Motion to recover the Refunds, the Trustee argues that the Supreme Court's decision in *Schwab v Reilly*, 130 S. Ct. 2652 (2010), compels the court to limit the Debtors' exemption to $0.00. During the evidentiary hearing, Debtors' counsel argued persuasively that the *Schwab* decision did not address the distinct issue of whether a debtor might amend an exemption under Fed. R. Bankr. P. 1009. The court agrees with Debtors' counsel that *Schwab* is distinguishable from the present case on the ground that the debtor in that case did not attempt to amend her exemptions. The

---

[3] In rebuttal, the Trustee offered a summary of Mr. Hampel's bankruptcy cases during the relevant period tending to show that Mr. Hampel generally conformed his other clients' exemption claims to the developing case law. Although the Trustee implied that Mr. Hampel was disingenuous in arguing that he was unaware of the emerging trend, the court instead reads the summary as corroborating its conclusion that Mr. Hampel made a mistake in the Logans' case by deviating in this one instance from the developing standards.

Supreme Court did not address a debtor's right to amend Schedule C and, therefore, the Trustee's reliance on that decision is misplaced.

The Trustee also relies on Judge Rhodes's decision in *In re Colvin*, 288 B.R. 477 (Bankr. E.D. Mich. 2003), for the proposition that the Debtors were reckless in preparing their schedules, and therefore should forfeit their exemption right. *Colvin*, however, is distinguishable because Judge Rhodes disallowed the exemption as a sanction for the debtors' failure to initially disclose their tax refunds on Schedule B. Here, the Debtors immediately disclosed the existence of 2009 tax refunds, albeit in an unknown amount. Although the Debtors ought to have estimated the Refunds, which would have been relatively simple given their previous 2008 tax returns, the Trustee concedes that the Debtors did not fail to disclose the existence of the refund right. Therefore, unlike *Colvin*, this case does not merit imposing a sanction by disallowing an exemption that would otherwise have been available had the Debtors not made the mistake of claiming an exemption in the amount of "$0.00."

Having carefully considered the record (including the transcript of the Debtors' first meeting of creditors),[4] it appears that the Debtors and their counsel made an error or non-prejudicial omission on Schedule C. As the court noted in its Order dated April 28, 2011, Fed. R. Bankr. P. 9005 appears to provide guidance in such circumstances.

More specifically, that rule makes Fed. R. Civ. P. 61 applicable in cases under the Bankruptcy Code but adds the following:

> When appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights.

---

[4] At the first meeting, the Debtors answered routine, general questions about the accuracy of their schedules, and made no specific representations regarding any refunds. As they did in response to the Trustee's questionnaire (Exh. 4), they answered "to the best of their knowledge."

Fed. R. Bankr. P. 9005.  Here, the Trustee concedes that the Debtors have not acted in bad faith and have not failed to disclose the existence of the Refunds.  Rather, the Trustee is troubled by the artless manner in which the Debtors attempted to claim exemptions under Schedule C, even after he called the issue to their attention.

Because the Trustee has not shown, however, that the errors or omissions in Debtors' original and first amended Schedule C affected the substantial rights of any party-in-interest, including the estate, the court finds that it may order the correction of the error by permitting the Debtors to amend Schedule C to specifically identify the precise and undisputed prorated amount of the Refunds.  Because the court is relying on Fed. R. Bankr. P. 9005, the amendment is merely declaratory. The court is simply permitting the Debtors to claim exemptions in the manner that they could have and should have, given the confusion resulting from the unliquidated nature of the Refunds initially.  Accordingly, the court will overrule the Trustee's objection to the exemptions, deny the Trustee's Motion for turnover, and permit the Debtors' amendment of Schedule C filed on February 28, 2011 to stand.

## VI. <u>CONCLUSION AND ORDER</u>

Once again, the court understands and shares the Trustee's frustration with the lack of care and responsiveness of the Debtors in claiming their exemptions, specifically by failing to provide an estimate.  The court notes that this particular Trustee has done much to improve the practice in this area. Nevertheless, the court is mindful that it must reach decisions on the merits, when appropriate by providing the relief that a party is otherwise entitled to, notwithstanding harmless error or omission.  Today's ruling comports with the axiom that a debtor may generally amend a voluntary petition schedule as a matter of course at any time before the case is closed.

*See* Fed. R. Bankr. P. 1009(a).  Courts in our Circuit are generally protective of exemption rights, perhaps given the remedial nature of bankruptcy. *See Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir.1984); *see also In re Hollinshead*, 2010 WL 727969, 3, 438 B.R. 354 (6th Cir. BAP 2010) (table).   Although the liberal amendment policy does not preclude a trustee or other interested party from objecting to amended exemptions, the court will not sustain an objection to exemptions in the absence of bad faith, concealment, prejudice or other substantial reason for undermining one of the pillars of the fresh start.  Here, the record shows not bad faith, but a mistake.  The rules provide a remedy in such a case.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's objection to exemptions (DN 34) is OVERRULED.

IT IS FURTHER ORDERED that the Trustee's Motion (DN 26) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jeff A. Moyer, Esq., Chapter 7 Trustee, Jeffrey L. Hampel, Esq., counsel for the Debtors, Natasha and Kenneth Logan, and the Office of the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: August 18, 2011**